CHRYSLAR vs. WESTFALL.

The provision of the statute (1 R. S. 353, § 30) directing that owners of adjoining lands shall each make and maintain a just proportion of the division fence between them, unless one of them shall choose to let his land lie open, was intended to apply to cases where lands have been partially fenced, as well as to those in which the owner chooses to let his land lie altogether in commons.

The language of the statute includes any case where the owner does not choose to enclose his land entirely.

APPEAL from a judgment of the Schenectady county court, reversing a judgment in favor of the plaintiff, rendered by a justice of the peace, on the verdict of a jury. In the justice's court Chryslar sued Westfall to recover the value of that part of a division fence which it is claimed he was bound to build, and refused after notice to build, and which was then built by the plaintiff. The defendant insisted that he was not liable to pay for the fence, because he chose to let his land adjoining that of the defendant lie open. The cause was tried before a jury, and on the trial it appeared that the plaintiff and defendant joined land for a distance of between two and three hundred yards. The land of the defendant is wood-land, twenty-five acres, which has never been enclosed by itself, and which was used only for timber and fuel. A portion of the farm of the defendant lies upon a road, and the wood lot is partially enclosed by fences. The land cleared is fenced, and in respect to the wood land owned by the defendant and adjoining the plaintiff on the south, there is a fence on the north separating it from a cleared field, and on the east, separating it from land of R. Kelley, and partially on the west, separating it from the cleared land of N. B. Dunham. In April, 1860, the plaintiff gave the defendant notice to select a fence viewer and have the fence divided. The fence viewers met, and made a certificate of division, which was filed in the town clerk's office. This paper was offered by the plaintiff as evidence, on the trial, and objected to by the defendant, and rejected by the justice. The plain-

Chryslar *v.* Westfall.

tiff gave the defendant notice to build his part of the fence. The defendant declined to do so, on the ground that he chose to let his land lie open. The plaintiff then built the whole of the fence. It was shown on the trial that the fence built by the plaintiff on the west half of the division line was worth $23 or $24. The recovery was for $23. There was some evidence in the case, tending to show that the defendant assented to the erection of the fence by the plaintiff, and promised to pay for it. The substance of the evidence on this subject was that the plaintiff called to see the defendant about the fence, and said to him " I suppose you don't want my cattle in your woods." The defendant answered " No ; I don't want them there." The plaintiff said " You don't want me to take up the fence again, do you ?" The defendant said he did not. The defendant said, " There wants to be a fence there." He also said he did not want any trouble or law about the fence, but would pay the plaintiff for it if he was obliged to.

There was a motion to nonsuit the plaintiff, but no grounds were stated. The case was submitted to the jury without objection, and they found a verdict for the plaintiff, upon which the justice gave judgment.

*J. H. Reynolds*, for the appellant, (plaintiff.)

*S. W. Jackson*, for the respondent, (defendant.)

*By the Court*, MILLER, J. Two questions arise in this case. First. Whether upon a fair construction of 1 *R. S.* 353, § 30, the defendant was bound to maintain a proportion of the fence erected by the plaintiff, and was liable to him for the expense of erecting it. Second. Whether, if not liable under the statute, there was any evidence upon the trial tending to show that the defendant had assented to the erection of the fence, or promised to pay the plaintiff for it after it was erected by him.

Chryslar *v.* Westfall.

I. I incline to the opinion that the statute referred to was intended to apply to cases where lands have been partially fenced as well as those in which the owner chooses to let his land lie altogether *in commons.* The language of the statute is quite broad and comprehensive, and the words *" shall choose to let such land lie open,"* includes any case where the owner does not choose to enclose his land entirely. Whatever, therefore, may have been the general object of the statute in reference to compelling owners of cattle to keep their cattle upon their own premises, and requiring them to share equally in the burthen of keeping and maintaining division fences, it has made an exception in favor of those who choose to let their land lie open; and it by no means destroys its force because perhaps a case may occasionally arise where the owner of adjoining land who desires to avail himself of that exception finds his land fully enclosed by reason of the action of adjoining owners in fencing their land. I think, therefore, upon a fair construction of the statute, the defendant was under no obligation to maintain a proportion of the division fence in question. The conclusion to which I have arrived, as to the meaning of the statute, renders it unnecessary to examine whether the action can be maintained without a division of the fence being made by the fence viewers, according to the provisions of 1 *R. S.* 353 and 354.

II. The solution of the second question depends entirely upon the fact whether there was any evidence to sustain the verdict upon the theory that the defendant admitted his liability and that the fence was made for his benefit. The evidence was hardly sufficient to establish a liability. The remarks of the defendant were mainly in answer to interrogatories put to him by the plaintiff, and were expressly qualified by an avowal that he would pay if obliged to do so. This cannot be regarded as assenting to the erection of the fence, so as to make him liable for the expense. Even if it may be inferred that the defendant was willing that the plaintiff should fence the land at his own expense, it is very

evident that he did not intend to incur any liability. There was no promise to pay; no acknowledgment of liability; no such approbation of the act of the plaintiff from which a promise might be implied. On the contrary, the defendant expressly denied his obligation to pay for the fence. His language was equivalent to saying, I am not bound, and refuse to pay for what you have done gratuitously and without my request, knowledge or consent. I think there was no evidence from which a jury were authorized to find an acknowledgment of liability or a promise to pay the plaintiff for making the fence. With the view I have taken, the question whether the verdict was for more than the defendant's proportion of the fence is unimportant.

The judgment of the county court should be affirmed.

[ALBANY GENERAL TERM, December 1, 1862. *Hogeboom, Peckham* and *Miller,* Justices.]